# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **STEWART C. MOREHEAD** | **CIVIL ACTION NO. 06-1961** |
| **VS.** | **SECTION P** |
| **BURL CAIN, WARDEN** | **JUDGE JAMES** |
| | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the court is a *pro se* petition for writ of *habeas corpus* (28 U.S.C. §2254) filed on
October 30, 2006, by Stewart C. Morehead.  Petitioner is an inmate in the custody of Louisiana's
Department of Public Safety and Corrections.  He is incarcerated at the Louisiana State
Penitentiary, Angola, where he is serving the life sentence imposed following his January 2002
conviction for second degree murder in the Fourth Judicial District Court, Ouachita Parish.

This matter has been referred to the undersigned for review, report, and recommendation
in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.  For the
following reasons it is recommended that the petition be **DENIED** and **DISMISSED WITH
PREJUDICE** as time-barred by the provisions of 28 U.S.C. §2244(d).

## *Background*

The petition [doc. 1-1], exhibits [doc. 1-2, 1-3, 1-4, and 1-5], and brief [doc. 2] filed on
October 30, 2006, provided some but not all of the information needed to complete an initial
review of this *habeas corpus* action.  Accordingly, on January 11, 2007, the undersigned directed
petitioner to provide additional information concerning the procedural history of his state court

1

litigation. [doc. 5] On January 31, 2007, petitioner responded to the Memorandum Order claiming that he could not provide the information requested.  He suggested that the documents in question could be provided by the Respondent. [doc. 6] The undersigned then requested a portion of the record from the District Attorney of the Fourth Judicial District. [doc. 7] On June 27, 2007, the District Attorney forwarded the portions of the State court record which had been requested.  [doc. 9 and Exhibits]

The record now before the court establishes the following relevant chronology:

***1. The Conviction and Imposition of Sentence***

Petitioner was convicted of second degree murder on January 21, 2002. [doc. 1-1, paragraph 2] The mandatory sentence of life imprisonment was imposed on April 26, 2002. [doc. 2, pp. 10- 11] [1]

---

[1] As is shown hereinafter, the date of sentencing is a crucial date in the determination of whether this petition was filed within the limitations period of 28 U.S.C. §2244(d). The undersigned has concluded that the petitioner was sentenced on April 26, 2002. This conclusion is based on a careful review of the record. In his brief filed in support of the instant *habeas corpus* petition, petitioner asserted the following: "Morehead was found guilty of second degree murder by a jury of his peers January 21, 2002 and subsequently sentenced to a term of life imprisonment without benefit of parole probation or suspension of sentence under docket number 99-F-1322, of the Fourth Judicial District Court, Ouachita Parish, Monroe, Louisiana on April 26, 2002." [doc. 2, pp. 10-11]

However, in the appeal brief filed on petitioner's behalf by the Louisiana Appellate Project, counsel claimed, "After the Court addressed and denied Mr. Morehead's Motion for Judgment of Acquittal on April 26, 2003, the Court sentenced him to life in prison without the benefit of probation, parole or suspension of sentence... (Record 2034-2037) The written order for appeal was signed April 29, 2003. (Record 392)." [doc. 1-2, p. 79; Appellee's Brief at p. 12] In his Memorandum in Support of the Application for Post-Conviction Relief filed in the Fourth Judicial District Court on June 20, 2005 [doc. 1-4, p. 1 – doc. 1-5 p. 34], petitioner also alleged that his Motion for Judgment of Acquittal was denied on April 26, 2003 and that he was sentenced on that same date. [doc. 1-4, p. 1] He made the same claim in his writ application filed in the Second Circuit Court of Appeals [doc. 9, Exhibits, Application for Writ of Review, at p. 1] and in his Application for Writ of *Certiorari* filed in the Louisiana Supreme Court. [doc. 9, Exhibits, Application for Writ of Certiorari, at p. 1] In his response to the Memorandum Order directing amendment of the pleadings petitioner alleged that "... to the best of his knowledge and belief, immediately after the trial court sentenced him, his defense counsel filed a notice of appeal and thereafter a motion for designation of the record..." [doc. 6, p. 1, fn. 1]

Nevertheless, petitioner attached a copy of the Chronological Index prepared by the Ouachita Parish Clerk of Court to his Louisiana Supreme Court Writ Application.  (A copy of the Supreme Court writ application was provided by the District Attorney, see doc. 9, Exhibits.) The index indicates that the Jury returned its guilty verdict on January 23,

## 2. Petitioner's Out-of-Time Appeal

On February 17, 2003, petitioner filed a *pro se* Motion for Appeal and Designation of the

Record in the Fourth Judicial District Court.  [doc. 9, Exhibits[2]] On April 29, 2003, the trial

judge signed an order providing,

> Considering the above captioned matter and the attached Motion for Appeal, and
> considering the *pro se* nature of said Motion, and considering the serious nature of
> this case, and considering the fact that this Division of Court is no longer assigned
> criminal duties, and considering the overall 'backdrop' of this case;
>
> IT IS ORDERED that all aspects of Defendant's post trial legal avenues
> (including – but not limited to – appeal) be, and is hereby, REFERRED to the
> Louisiana Appellate Project for all purposes – appellate or otherwise.  [doc. 9,
> Exhibits]

On May 6, 2003, the district court signed another order as follows,

> Considering that the Louisiana Appellate Project is only authorized to handle
> indigent felony appeals, the order referring all aspects of Defendant's post trial

2002 and that petitioner's attorney filed a Motion for Judgment of Acquittal Notwithstanding the Verdict on
February 25, 2002, that a Motion to Continue was filed on April 5, 2002, that the trial court rendered a Judgment on
April 26, 2002, that an Order to Withdraw as Counsel was filed on May 2, 2002, that another Judgment was rendered
on May 23, 2002, that a Motion and Order for Production of Documents was filed on October 24, 2002, that a
Motion for Public Records was filed on December 6, 2002, and finally, that a Motion for Appeal and Designation of
the Record was not filed until February 19, 2003. The Chronological Index further indicates that an Order for Out-
of-Time Appeal was issued on May 7, 2003, that a Notice of Appeal was filed on May 8, 2003, that a Notice of
Appellate Counsel was filed on May 23, 2003, and,  that a Motion and Order to Enroll was filed on June 6, 2003.
Finally, the Chronological Index indicates that the Note of Evidence (Sentencing) was filed April 26, 2003. [See doc.
9, Exhibits]

The undersigned concludes that petitioner was in fact sentenced on April 26, 2002 (as petitioner asserts in brief) and
not April 26, 2003 (as is asserted in the appeals brief and in petitioner's application for post-conviction relief and
subsequent writ applications.)  In arriving at this conclusion, the undersigned notes that April 26, 2003, was a
Saturday and it is highly unlikely that court would have convened on a Saturday more than one-year after petitioner's
conviction to sentence the petitioner. Further, as is shown hereinafter, petitioner filed a pro se motion for appeal in
February, 2003. Petitioner would not have filed a Motion for Appeal prior to sentencing; and, as is shown in the
Chronology, the transcript of the sentencing was filed into the record on April 26, 2003. It is unlikely that the
transcript would have been prepared and filed on the same date as the sentencing.

[2] This pro se pleading is entitled, "Motion for Appeal and Designation of Record." It is dated February 17,
2003 and received and filed February 19, 2003. At the conclusion of the pleading, petitioner prayed that "... he be
granted an appeal to the First [sic] Circuit Court of Appeals returnable in accordance with the law." [doc. 9,
Exhibits]

3

> legal avenues to the Louisiana Appellate Project rendered on April 29, 2003, is
> hereby recalled and vacated; Further, considering the pro se Motion for Appeal
> filed by Defendant on February 19, 2003,
>
> IT IS ORDERED that an out of time appeal be granted in this case in behalf of the
> defendant to the Second Circuit Court of Appeal of the State of Louisiana and let
> the Louisiana Appellate Project ... be appointed to handle the appeal of this case;
> the return date being the 7th day of June, 2003.  [doc. 9, Exhibits]

Court-appointed appellate counsel filed an appeal brief on September 25, 2003, raising two

Assignments of Error: (1) insufficiency of the evidence [doc. 1-2, p. 79, Brief on Appeal, p. 12];

and, (2) ineffective assistance of counsel.  [doc. 1-2, p. 80, Brief on Appeal, p. 13]  On April 2,

2004, petitioner's conviction was affirmed by Louisiana's Second Circuit Court of Appeal. *State*

*of Louisiana v. Stewart C. Morehead*, 38,124 (La. App. 2 Cir. 4/2/04), 870 So.2d 428. [See also

Slip Opinion, doc. 1-2, pp. 42-64] Notice of Judgment was mailed to petitioner and his appellate

counsel on that date. [doc. 1-2, p. 41] On April 6, 2004, appellate counsel advised petitioner that

she would not seek further review in the Louisiana Supreme Court. [doc. 1-2, p. 40]

On April 26, 2004, petitioner mailed a *pro se* writ application to the Louisiana Supreme

Court.  The application was received and filed on May 28, 2004. [doc. 1-2, p. 4] Petitioner

argued claims identical to those raised in his counseled appeal brief to the Second Circuit. [doc.

1-2, pp. 5-39] On October 15, 2004, his writ application was denied by the Louisiana Supreme

Court. *State of Louisiana v. Stewart C. Morehead*, 2004-1283 (La. 10/15/2004), 883 So.2d 1043.

[See also doc. 1-2, p. 3] Petitioner did not seek further direct review in the United States

Supreme Court. [see doc. 2, Brief of Petitioner, at footnote 3]

### 3. Application for Post-Conviction Relief

On June 20, 2005, petitioner filed a *pro se* Application for Post-Conviction Relief in the

Fourth Judicial District Court.  In a rambling 80 page brief (typed and single-spaced) he argued 7 numbered claims for relief and various and sundry claims associated with the numbered claims.[3] On August 15, 2005, the trial court denied the application with a one-page order entitled "Post Conviction Relief Ruling." [doc. 1-3, p. 5]

Petitioner filed a writ application in the Second Circuit Court of Appeals on September 9, 2005. [doc. 2, p. 11; see also doc. 1-3, p. 3; doc. 9, Exhibits, "Application for Writ of Review"] On October 13, 2005, petitioner's writ was denied, the appellate court having determined, "The applicant's claims have no merit ..." *State of Louisiana v. Stewart C. Morehead*, No. 40684-KH (La. App. 2 Cir. 10/13/2005) (unpublished writ denial). [doc. 1-3, p. 3; doc. 9 Exhibits, Notice of Judgment and Certificate of Mailing, Docket No. KH 05-40684 and Judgment of the Second

---

[3] Petitioner argued the following claims: I. Ineffective Assistance of Counsel – A. Trial counsel failed to properly prepare a defense, investigate the petitioner's case or call witnesses on petitioner's behalf. (Petitioner then cited 13 specific instances in support of this claim.) [doc. 1-4, pp. 3-7, Post-Conviction Brief, pp. 3-7] B. Trial counsel proved to be mentally incompetent (Petitioner then cited 14 specific instances in support of this claim.) [*id*., pp. 7-8] C. Trial counsel failed to make proper objections during trial (a) during voir dire [*id*., pp. 9-12]; (b) during opening statements [*id*., pp. 12-13]; (c) during closing statements [*id*., pp. 13-15]; (d) counsel failed to object to the relevancy of the knife introduced into evidence [*id*., pp. 20-21]; (e) counsel failed to object to inflammatory pictures of the crime scene [*id*., pp. 21-23]; (f) counsel failed to object when the court expressed its personal opinion [*id*., p. 23]; (g) counsel failed to properly object to the introduction of other crimes evidence [*id*., pp. 23-24] (h) counsel failed to object when the State called witness Rick Jones [*id*.]; D. Trial counsel improperly "handled" voir dire [doc. 1-4, pp. 27-30]; E. Trial counsel conceded petitioner's guilt on several occasions [*id*., pp. 30-32]; F. Trial counsel was preoccupied with other matters [*id*., pp. 32-34]; G. Trial counsel failed to challenge false testimony [*id*., pp. 34-36].
II. Petitioner was denied effective assistance of appellate counsel because:
(A) appellate counsel failed to raise the issue of prosecutorial misconduct in all instances where the prosecutor "ingratiated himself to the jury;" [Petitioner then provided a litany of instances in which he claims the prosecutor "ingratiated himself" with the jury [*id*., pp. 36-45];(B) Appellate counsel failed to seek review of each objection that had been made at trial [*id*., pp. 45-47 and doc. 1-5, pp. 1-2]
III. Court abused its discretion in its role to provide petitioner with a fair trial free from bias or conflict of interest. (Petitioner then provided a rambling litany of instances he claimed established bias.) [*id*., pp. 2-19]
IV. Petitioner was tried and convicted under an invalid indictment. [*id*., pp. 20-25]
V. The court abused its discretion in denying the petitioner his Sixth Amendment right to confrontation in permitting a number of hearsay declarations to be admitted into evidence [*id*., pp. 26-30]VI. Petitioner's Fifth Amendment right against self-incrimination was violated when he was forced to testify. [*id*., pp. 30-32]
VII. Petitioner was denied the right of judicial review based upon a complete record of the trial and ineffective assistance of appellate counsel. [*id*., pp. 32-34]

Circuit, October 13, 2005.]

Petitioner timely filed his writ application in the Louisiana Supreme Court.  Although it was not received and filed in the Supreme Court until January 11, 2006 [doc. 2, footnote 5], the pleading was signed on October 27, 2005, and post-marked October 28, 2005. [doc. 9, Exhibits, Petitioner's Writ Application and Envelope]  On September 22, 2006, the Supreme Court denied writs. *State ex rel. Stewart C. Morehead v. State of Louisiana*, 2006-0079 (La. 9/22/06), 937 So.2d 374. [doc. 1-3, p. 2]

Petitioner signed his federal *habeas corpus* petition on October 20, 2006 [doc. 1-1, p. 7]; it was received and filed on October 30, 2006.  He presented twelve claims for relief.[4]

_____

[4] A-1 The conviction violates due process of law where the evidence was insufficient to establish beyond a reasonable doubt that Mr. Morehead committed this crime. A-2 The conviction violates the Sixth Amendment where Mr. Morehead received ineffective assistance of counsel.

B-1 Petitioner was denied his constitutional right to effective assistance of trial counsel where trial counsel: (a) failed to properly prepare a defense, failed to investigate the facts of the case, and failed to call witnesses on his client's behalf; (b) During the trial, defense counsel proved to be mentally incompetent, failed to make proper objections during voir dire with regards to the prosecution's improper assertions, failed to make proper objections during opening arguments by the prosecution regarding evidence that was not presented at trial and with regards to the prosecution's self-serving opinion of Morehead's guilt; (c) failed to properly object to the prejudicial remarks made by the prosecution during closing arguments; (d) failed to properly object and request a mistrial when a juror was found sleeping during the crucial, but convoluted testimony of Clarissa Morehead; (e) failed to object to the relevancy of a knife introduced into evidence that was not the murder weapon; (f) failed to object to the prosecutorial taunts; (g) failed to object to the gruesome and inflammatory photographs being introduced at trial; (h) counsel failed to object and call for a mistrial when the trial court inserted its own personal opinion on the evidence presented; (i) failed to object to the prejudicial 'other crimes' evidence; (j) failed to object to the prosecutor's misstatement of the law and facts ... B-2  Counsel's performance during the trial and voir dire presents his ennui and lack of competence or a proper understanding of the issues; counsel's badgering and berating potential jurors hence counsel rendered ineffective assistance...B-3  Counsel rendered ineffective assistance of counsel when he conceded to his client's guilt during trial. B-4  Counsel rendered ineffective assistance where he failed to object and challenge the false testimony offered by the prosecution during trial.B-5  Petitioner was denied effective assistance of appellate counsel.

B-6  The trial court abused its discretion by failing to provide petitioner with a fair trial, a trial free from judicial and personal bias and free from conflicts of interest...B-7 The petitioner's conviction has been obtained in violation of Due Process of Law since it has been obtained based upon an invalid indictment...B-8 Petitioner's Sixth Amendment right to confrontation was violated by the trial court by allowing hearsay testimony to be given by Clarissa Moreland; B-9 Petitioner was denied his Fifth Amendment right against self-incrimination when he was forced to testify. B-10 Petitioner was denied his Fourteenth Amendment rights under the United States Constitution to substantive and procedural due process right to a fundamentally fair appeal, as the merits of the appeal were decided upon an incomplete record and appellate counsel was ineffective in light of the same, for allowing said appeal to be based upon less than a complete transcript of the entire proceedings... [doc. 2, pp. 23-23; Original Brief of Petitioner, pp. 15-16]

*Law and Analysis*

This petition was filed after the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Therefore, the court must apply the provisions of AEDPA, including the timeliness provisions. *Villegas v. Johnson,* 184 F.3d 467, 468 (5th Cir. 8/9/1999); *In Re Smith,* 142 F.3d 832, 834, citing *Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).  28 U.S.C. §2244(d)(1)(A) was amended by AEDPA to provide a one-year statute of limitations for the filing of applications for writ of *habeas corpus* by persons in custody pursuant to the judgment of a State court.  This limitation period generally runs from "...the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review..." 28 U.S.C. §2244(d)(1)(A).[5]

However, the statutory tolling provision set forth in 28 U.S.C. § 2244(d)(2)  provides that the time during which a properly filed application for post-conviction relief was pending in state court is not counted toward the limitation period.   *Ott v. Johnson,* 192 F.3d 510, 512 (5th Cir. 1999); *Fields v. Johnson,* 159 F.3d 914, 916 (5th Cir. 1998); 28 U.S.C. §2244(d)(2). Any lapse of time before the proper filing of an application for post-conviction relief in state court is counted against the one-year limitation period. *Villegas,* 184 F.3d 467, citing *Flanagan v. Johnson*, 154 F.3d 196, 197 (5th Cir.1998).  Federal courts may raise the one-year time limitation *sua sponte*. *Kiser v. Johnson,* 163 F.3d 326 (5th Cir. 1999).

---

[5] Nothing in the record suggests that State-created impediments prevented the filing of this petition. Further, nothing suggests that petitioner is relying on a constitutional right newly recognized by the United States Supreme Court and made retroactively applicable to cases on collateral review.  Finally, nothing suggests that the factual predicate of the claims presented was only recently discovered. [See 28 U.S.C. § 2244(d)(1)(B), (C), and (D)].

As shown above, petitioner was sentenced on April 26, 2002.  He did not appeal his conviction and sentence within the delays provided by La. C.Cr.P. art. 914.   For AEDPA purposes, petitioner's judgment of conviction and sentence "became final by ... the expiration of the time for seeking [direct] review" [28 U.S.C. § 2244(d)(1)(A)], on or about May 6, 2002.[6]  See *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir.2003) (if defendant stops the appeal process before entry of judgment by court of last resort, the conviction becomes final when the time for seeking further direct review in the state court expires.)  Under 28 U.S.C. § 2244(d)(1) he had one year, or until May 6, 2003, to file his federal *habeas* petition.

Petitioner filed his *ex parte* motion seeking an out-of-time appeal on February 17, 2003, and that filing served to toll the limitations period during the pendency of his out-of-time appeal. However, by the time he filed the motion, 287 days of the one-year AEDPA limitations period had elapsed.  As noted, any lapse of time <u>before</u> the proper filing of an application for post-conviction relief or other collateral review in the state court must be counted against the one-year limitation period. *Villegas,* 184 F.3d 467, citing *Flanagan v. Johnson*, 154 F.3d 196, 197 (5th Cir.1998).

---

[6] See La. C.Cr.P. art. 914(b)(1) which, at the time of petitioner's conviction, provided, "The motion for an appeal must be made no later than [f]ive days after the rendition of the judgment or ruling from which the appeal is taken." Art. 914 was amended by Act No. 949, § 1 of the 2003 Louisiana Legislature to extend the time period to thirty days. The amended version of the statute did not take effect until August, 2003. Therefore, petitioner had five days, exclusive of holidays, to file a motion for appeal. La. C.Cr.P. art. 13 provides: "In computing a period of time allowed or prescribed by law...the date of the act, event, or default after which the period begins to run is not to be included. The last day of the period is to be included, unless it is a legal holiday, in which event the period runs until the end of the next day which is not a legal holiday. ... A legal holiday is to be included in the computation ... except when ...the period is less than seven days." Petitioner was sentenced on Friday, April 26, 2002. The five day delay for filing an appeal commenced on Monday, April 29.  (Saturday April 27 and Sunday, April 28,  were legal holidays. The five day period for taking an appeal ended on Friday, May 3, 2002. Therefore,  petitioner's judgment of conviction and sentence became final, at the latest, on that date. However, another weekend (Saturday May 4 and Sunday May 5) intervened and therefore, for the purposes of this Report, the AEDPA limitations period has been calculated from Monday, May 6, 2002.

Petitioner was able to toll the limitations period during the pendency of his out-of-time appeal.  However, the out-of-time appeal was no longer pending once the Louisiana Supreme Court denied writs in his case on October 15, 2004. See *State of Louisiana v. Stewart C. Morehead*, 2004-1283 (La. 10/15/2004), 883 So.2d 1043. Thereafter, another 247 days elapsed between the Supreme Court's writ denial and the date upon which petitioner filed his Application for Post Conviction Relief on June 20, 2005.  Thus, a  period of 534 days elapsed un-tolled between the date that petitioner's judgment of conviction and sentence became final and the date upon which he filed for federal *habeas corpus* relief.

Petitioner contends that his conviction and sentence were final for AEDPA purposes 90 days following the Louisiana Supreme Court's denial of *certiorari* on direct appeal.  [doc. 2, p. 11, footnote 3]  His contention is incorrect. As stated above, if a defendant stops the appeal process before the entry of judgment by the court of last resort, the conviction becomes final when the time for seeking further direct review in the state court expires. *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir.2003).  For AEDPA purposes, petitioner's judgment became final when the delays for seeking a direct appeal lapsed; as is shown hereinafter, the judgment could not be "de-finalized" by the trial court's  reinstatement of his appeal rights. As will be shown, the out-of-time appeal process was, for AEDPA purposes, part of the  post-conviction or other collateral review process, and therefore the pendency of that process operated to toll the limitations period but otherwise played no part in the determination of finality of judgment.  In *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999), the Fifth Circuit observed:

> First, unlike § 2244(d)(1)(A), which takes into account the time for filing a *certiorari* petition in determining the finality of a conviction on direct review, §2244(d)(2) contains no such provision. Rather, § 2244(d)(2) only tolls the period

for a properly filed petition for 'State post-conviction or other collateral review.' It is a fundamental tenet of statutory construction that Congress intended to exclude language included in one section of a statute, but omitted from another section. We conclude and hold that a petition for writ of *certiorari* to the Supreme Court is not an application for 'State' review that would toll the limitations period.

In other words, petitioner's out-of-time appeal in the Second Circuit Court of Appeals and Louisiana Supreme Court was, for AEDPA purposes an application for post-conviction relief. When that process ended with the Supreme Court's writ denial, petitioner's state post-conviction proceeding no longer remained pending.

Of course, an argument could be advanced for the proposition that when a Louisiana court grants an out-of-time appeal, as was done in this case, the *habeas* petitioner's AEDPA clock is "restarted" as of the date upon which the out-of-time appeal process has concluded. Stated another way, it might  be argued that a conviction does not become "final" until the conclusion of the out-of-time appeal process, and, since the one-year limitations period codified at § 2244(d) commences on "...the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review...", a federal *habeas* petitioner has a full year reckoned from the date that the out-of-time appeal process concludes within which to file his petition.  However, the Fifth Circuit has rejected such an argument.

In *Salinas v. Dretke*, 354 F.3d 425 (5th Cir. 2004), *certiorari denied*, 541 U.S.1032, 124 S.Ct. 2099, 158 L.Ed.2d 714 (2004), the court examined the effects of an out-of-time appeal on the AEDPA's timeliness provisions.  In *Salinas*, the petitioner had allowed his right to seek further direct review lapse; he was successful in getting those lapsed rights reinstated, however. On appeal, he argued that (1) when Texas' high court granted him the right to file an out-of-time

petition for discretionary review, it restored him to the position he was in when he first had the right to seek discretionary review; and, (2) since he still had the right to file for discretionary review, he should be considered to be in the midst of the direct review process; and, (3) therefore, the AEDPA statute of limitations could not have lapsed because the period could begin only on the conclusion of direct review.  Or, as this argument was summarized by the Fifth Circuit, "Thus, Salinas argues, his conviction was 'de- finalized,' and the statute of limitations – though legitimately initiated in August 2000 – should be deemed to have begun again with the rejection of the PDR [Petition for Discretionary Review] n January 2003." *id.. at* 429.  The Fifth Circuit rejected that argument:

> On its face, AEDPA provides for only a linear limitations period, one that starts and ends on specific dates, with only the possibility that tolling will expand the period in between. See § 2244(d)(1), (2). So long as the petitioner is being held pursuant to the same state court judgment, nothing in AEDPA allows for a properly initiated limitations period to be terminated altogether by collateral state court action. Rather, the statutory framework only provides for the tolling of limitations during the pendency of state collateral review. See § 2244(d)(2).

> Thus, the issue is not whether the Court of Criminal Appeals' action revitalized Salinas's limitations period, but rather whether the existence of that potential relief prevents the limitations period from starting to run until after that level of appeal has been denied. That is to say, we need to determine whether, in Texas, the mechanism by which Salinas obtained the right to file an 'out-of-time' PDR is part of the direct or collateral review process. If that relief comes as a result of direct review, there would be no basis for limitations even to begin running until the Court of Criminal Appeals has finalized the judgment by declining to grant relief on that level of appeal. If, on the other hand, an 'out-of-time' PDR is awarded only as a result of the collateral review process, limitations is tolled merely while the petitioner seeks to obtain that relief. *Id.* at 429-430 (emphasis supplied)

Thereafter, the Fifth Circuit analyzed Texas law and concluded that the Court of Criminal Appeals was authorized to grant Salinas his out-of-time petition only through the collateral

11

review process of the Texas *habeas* statute.  The court concluded,

> As a result, when a petitioner convicted in the Texas system acquires the right to file an 'out-of-time' PDR, the relief tolls AEDPA's statute of limitations until the date on which the Court of Criminal Appeals declines to grant further relief, but it does not require a federal court to restart the running of AEDPA's limitations period altogether.... Therefore, because Salinas's right to file the 'out-of-time' PDR is necessarily the product of state *habeas* review, it does not arise under the 'direct review' procedures of the Texas judicial system. Accordingly, the Court of Criminal Appeals' granting of Salinas's writ does not alter the fact that limitations set forth in 28 U.S.C. § 2244(d)(1)(A), properly began to run on August 21, 2000, and fully lapsed on March 31, 2002.  *id.* at 430-431.

This reasoning is applicable to the case at bar.  In Louisiana the only mechanism which can be employed to reinstate lapsed appeal rights and thus grant an out-of-time appeal is the collateral review process.  See *State v. Counterman*, 475 So.2d 336 (1985).  In *Counterman*, the Louisiana Supreme Court held:

> La.C.Cr.P. Art. 915 requires the court to order an appeal when a motion for appeal is made in conformity with Articles 912, 914 and 914.1. <u>However, when a defendant fails to make a motion for appeal within the time provided in Article 914, he loses the right to obtain an appeal by simply filing a motion for appeal in the trial court. This is not because the trial court has been divested of jurisdiction, as was held in *State v. Braxton*, 428 So.2d 1153 (La.App. 3rd Cir.1983), but because the conviction and sentence became final when the defendant failed to appeal timely</u>.
>
> <u>After the time for appealing has elapsed, the conviction and sentence are no longer subject to review under the ordinary appellate process, unless the defendant obtains the reinstatement of his right to appeal.</u>  *State v. Counterman*, 475 So.2d at 338. (emphasis supplied)

And, concluded the Court, "...<u>the appropriate procedural vehicle for a defendant to seek the exercise of his right to appeal</u>, after the delay provided in Article 914 has expired, is an <u>application for post conviction relief</u> pursuant to Articles 924-930.7." *id.* at 339. (emphasis supplied.)

12

In this case, petitioner's *ex parte* motion for an out-of-time appeal was erroneously granted by the trial court. Under Louisiana law, petitioner's lapsed appeal right could only be reinstated through Louisiana's collateral review process, the Application for Post-Conviction Relief.  Nevertheless, petitioner cannot profit from the error.  As shown above, petitioner's judgment of conviction became final for AEDPA purposes when the period for seeking direct review lapsed and no timely motion for appeal was filed.  Petitioner, like Mr. Salinas, was not entitled to have his conviction "de-finalized" by the trial court's order granting an out-of-time appeal.

In other words, petitioner's out-of-time appeal was, in essence, collateral and not direct review for AEDPA purposes.  That process began with the filing of petitioner's *ex parte* motion for an out-of-time appeal, proceeded through his out-of-time appeal before the Second Circuit, and concluded when the Louisiana Supreme Court denied his writ application.

Further, as shown above, petitioner's argument that the AEDPA clock was tolled during the 90 day period within which he might have applied for *certiorari* in the United States Supreme Court following the Louisiana Supreme Court's first writ denial has been specifically rejected by the Fifth Circuit Court of Appeals. See  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999).[7]

In other words, petitioner's judgment of conviction became final for AEDPA purposes

---

[7] Of course, the argument is purely academic. Even if petitioner's out-of-time appeal remained pending for an additional 90 days, his federal *habeas* petition would still be untimely. As shown above, petitioner's judgment of conviction became final by the conclusion of the time for seeking direct review on May 6, 2002. A period of 287 days lapsed between finality of judgment under the AEDPA and February 17, 2003, when petitioner commenced the out-of-time appeal process and thus tolled the limitations period. If the out-of-time appeal were considered "pending" through January 13, 2005, as asserted by petitioner, another 157 days elapsed between that date and June 20, 2005, the date petitioner filed his application for post-conviction relief.  Thus, even under the more favorable scenario, a period of 444 un-tolled days elapsed between finality of judgment and the date petitioner filed his federal *habeas* writ.

when the delay for seeking direct review lapsed in May 2002. Petitioner's ex parte motion for

out-of-time appeal tolled, but did not re-start the limitations period. More than 365 un-tolled days

elapsed between May 2002 and the date petitioner filed his petition for *habeas corpus*. Therefore,

petitioner's habeas corpus petition is untimely and dismissal on that basis is appropriate.

Finally, petitioner's pleadings and exhibits do not suggest extraordinary circumstances

such as to warrant the application of  equitable tolling thus exempting petitioner's claims from

dismissal under §2244(d)(1).  The one-year limitation period is subject to equitable tolling but,

only in "rare and exceptional cases." *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir.1998), *cert.*

*denied*, 526 U.S. 1074, 119 S.Ct. 1474, 143 L.Ed.2d 558 (1999); see also *Fisher v. Johnson*, 174

F.3d 710, 713 (5th Cir.1999) (asserting that courts must "examine each case on its facts to

determine whether it presents sufficiently 'rare and exceptional circumstances' to justify

equitable tolling" (quoting *Davis*, 158 F.3d at 811)).

Neither unfamiliarity with the legal process (whether the unfamiliarity is due to illiteracy

or any other reason), ignorance of the law, nor even lack of representation during the applicable

filing period merits equitable tolling. See *Turner v. Johnson*, 177 F.3d 390, 291 (5th Cir.1999);

see also *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir.1991) (age discrimination

case).

The circumstances alleged herein are not extraordinary enough to qualify for equitable

tolling under § 2244(d)(1). "Equitable tolling applies principally where the plaintiff is <u>actively</u>

<u>misled by the defendant</u> about the cause of action <u>or is prevented in some extraordinary way from</u>

<u>asserting his rights</u>." *Coleman v. Johnson*, 184 F.3d 398, 402 (1999), *cert. denied,* 529 F.3d 1057,

120 S.Ct. 1564, 146 L.Ed.2d 467 (2000), (quoting *Rashidi v. American President Lines*, 96 F.3d

124, 128 (5th Cir.1996) emphasis supplied); see also *Ott v. Johnson*, 192 F.3d at 513 (5th Cir.

1999).  The pleadings do not suggest that petitioner was "actively misled" nor do they suggest

that he was prevented in any way from asserting his rights.

Further, to the extent that petitioner might suggest that his trial counsel's failure to timely

move for direct appeal resulted in his present predicament, such a suggestion is without a basis in

law. Attorney error or neglect is not an extraordinary circumstance justifying equitable tolling. *In

re Lewis*, — F.3d —, 2007 WL 1098434 (5th Cir. April 13, 2007); *United States v. Riggs*, 314

F.3d 796, 799 (5th Cir.2002);  *Fierro v. Cockrell*, 294 F.3d 674, 683 (5th Cir.2002), *cert. denied*,

538 U.S. 947, 123 S.Ct. 1621, 155 L.Ed.2d 489 (2003), (an attorney's erroneous interpretation of

the limitations provision was not an excuse for timely filing a § 2254 petition); *Cousin v.

Lensing*, 310 F.3d 843, 849 (5th Cir.2002), *cert. denied*, 539 U.S. 918, 123 S.Ct. 2277, 156

L.Ed.2d 136 (2003), ("mere attorney error or neglect" is not an "extraordinary circumstance"

warranting equitable tolling); and *Moore v. Cockrell*,  313 F.3d 880 (5th Cir.2002), *cert. denied*,

538 U.S. 969, 123 S.Ct. 1768, 155 L.Ed.2d 526 (2003) (an attorney's delay in notifying a

petitioner of the result of his direct appeal did not warrant equitable tolling).

**ACCORDINGLY,**

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DENIED AND

DISMISSED WITH PREJUDICE**  because petitioner's claims are barred by the one-year

limitation period codified at 28 U.S.C. §2244(d) and he is not eligible for the benefits of

equitable tolling.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved

by this Recommendation have ten (10) business days from service of this Report and

Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).**

**THUS DONE AND SIGNED** in Chambers at Monroe, Louisiana, this 3rd day of August, 2007.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE